# United States District Court
# Central District of California

NEDA FARAJI,

          Plaintiff,

    v.

TARGET CORPORATION; DOES 1 through 50, inclusive,

          Defendants.

Case No. 5:17-cv-00155-ODW-SP

**ORDER RE: EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF, AND OPPOSITION TO, PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [70, 71, 72]**

## I.    INTRODUCTION

On September 25, 2017, Plaintiff Neda Faraji moved to certify a class of salaried executive team leaders in asset protection ("ETL-APs") who worked at Defendant Target Corporation's California stores.  (ECF No. 45.)  Plaintiff argues that Target incorrectly classified its ETL-APs as exempt executives and administrators, which resulted in the ETL-APs being underpaid in violation of California law.  Target disputes this contention and opposes the Motion for Class Certification.  Both Plaintiff and Target submitted documents and declarations in support of their respective positions in connection with the Motion.  Both parties have lodged objections to the other parties' evidence.  The Court rules on those objections herein.[1]

---

[1] After considering the papers filed in connection with the Motions and objections, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. DISCUSSION

### A. Target's Motion to Strike Declaration of David Spivak

In support of her Motion for Class Certification, Plaintiff submitted a declaration from her attorney, David Spivak. (Decl. of David Spivak ("Spivak Decl."), ECF No. 49-3.) On November 1, 2017, Target moved to strike portions of Spivak's Declaration on evidentiary grounds. (ECF No. 70.) Plaintiff opposed Target's Motion on December 28, 2017. (ECF No. 84.) After considering the parties' papers in support of, and in opposition to, the Motion and Spivak's Declaration itself, the Court concludes that large portions of the declaration include impermissible summaries of the evidence (when the evidence should speak for itself), improper legal argument, *see Fuchs v. State Farm. Gen. Insurance Co.*, CV 16-01844-BRO-GJS, 2017 WL 4679272, at *2 (C.D. Cal. Mar. 6, 2017) ("Courts in this Circuit have stricken portions of declarations . . . [and] entire declarations where these contained improper argument that should have been included in the memorandum of points and authorities."), or lack the necessary personal knowledge or foundation, *see United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) ("In general, an attorney does not have personal knowledge . . . of a document produced by his client or created prior to litigation."). With regard to Target's specific objections, the Court rules as follows:

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 1. "On April 12, 2017, this Court implicitly acknowledged that class certification could depend on the existence of questions about whether the executive team leader in asset protection ("ETL-AP") job duties are exempt or not. Ex. 6, 6:15-22 ("Plaintiff must obtain class | Improper legal argument. | **Sustained.** The Court's previous order speaks for itself. |
| | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The Court's previous order speaks for itself. |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| members' contact information, communicate with the estimated 3,391 members, and conduct interviews with a statistically significant and representative sample about eighty-three different job duties to determine whether Defendant mischaracterized the duties it assigned to all class members as exempt."). Despite the Court's Order, Defendant refused to produce the names and contact information of the putative class members. On April 17, 2017, Plaintiff filed an Ex Parte Application for an Order for Defendant Target Corporation to Provide Putative Class Members' Contact Information based on the arguments stated in Plaintiff's Memorandum of Points and Authorities. On April 28, 2017, this Court found that Plaintiff made a *prima facie* showing that "the class contact information will enable plaintiff to contact class members to gather evidence to show commonality and predominance, among the other elements." *Id.*, Ex. 7, p. 7.<br><br>. . .<br><br>Accordingly, the Court ordered Defendant to produce to Plaintiff the names, addresses and telephone numbers of the ETL-APS for the period of November 28, 2012 to the present. *Id.*" Spivak Decl., ¶ 9. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 2. "Defendant's Director of Employee Relations Michael Brewer testified that, to his knowledge, this is a list of information of the ETL-APs Defendant employed since November 28, 2012 that it prepared in response to Plaintiffs request. *See, infra*, ¶ 16, MB, 194:5-19." Spivak Decl., ¶ 13. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** Also improper summary of evidence that should speak for itself. |
| 3. "According to Defendant, Director of Employee Relations Michael Brewer is experienced and knowledgeable in its wage and hour practices. *See* Ex. 3. Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant named Mr. Brewer as the person most qualified to testify on its behalf about subjects related to Plaintiffs claims. | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** Also improper summary of evidence that should speak for itself. |
| . . . As such, his statements are binding on Defendant. Defendant testified that Asset Protection ("AP") is "a function," a part of the "corporate risk" "pyramid" rather than a department or recognized subdivision of Target. *Id*, 24:9-24. Even though Defendant classifies Target Protection Specialists ("TPSs") and Asset Protection Specialists ("APSs") as subordinates to ETL-APs, Defendant provides the ETL-APs with little to no control over them. Defendant's corporate office directly assigns | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | Improper legal argument and conclusion. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| them daily routines and new tasks every day. *See* Ex. 13; *see, infra*,¶ 17, NF, 44 3: 5-16; *see, infra*,'¶ 18, EA, 172:1-7. Defendant does not permit the ETL-APs to order the TPSs and APSs to deviate from the routines or assigned tasks. *See* Declaration of Neda Faraji ("DNF"), ¶ 11; DEA, ¶ 9; RH, ¶ 10; SL, ¶ 10; NR, ¶ 9; SS, ¶ 10; AS, ¶ 10; MS, ¶ 10. ETL-APs merely follow Defendant's policies and procedures. Even if the Court finds that the ETL-Aps "manage" Defendant's AP, they do not qualify as executives since Defendant testified that AP is not a department or division but rather a "function" within a "pyramid." MB, 24:9-24." Spivak Decl., ¶ 16. | | |
| 4. | "Mr. Brewer testified that, to his knowledge, this is the 2014 version of Defendant's exempt team member handbook that was made available to Defendant's employees on its intranet. *See* MB, 151:18-152:12. In spite of the expectations outlined in Plaintiff's Memorandum of Points and Authorities (Section II(D)-II(F)), Defendant informs its ETL-APs that it is "critical" that they "continually" spend substantially more than 50% of their time on leadership responsibilities instead of hourly tasks. Ex. 18, TARGET_NF-82-83. | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** Also improper summary of evidence that should speak for itself. |
| | | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | | Improper legal argument. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| Defendant lists "managing performance," "rewarding excellence," and "managing guest issues" as examples of "managerial" and "leadership" responsibilities while listing zoning, stocking, cashiering, and unloading trailers and moving boxes as examples of "hourly" duties. *Id.*, TARGET_NF-83. Defendant also advises the ETL-APs in writing that it expects them to immediately clean up spills, pick up objects on the floor, and keep the floor clean and dry. *Id.*, TARGET_NF-109. Defendant fails to indicate whether it views these tasks as "hourly," "leadership," or "managerial." *Id.*" Spivak Decl., ¶ 20. | | |
| 5. "Defendant advises the ETL-APs that it will not subject them to "adverse action" for their self-audit responses. *See* Ex. 31. However, it does not indicate whether their Store Team Leaders ("STLs") may be subjected to adverse actions for their responses. Further, Defendant instructs the ETL-APs that failure to spend the majority of their worktime on "managerial" and "leadership" duties is cause for an immediate report to their supervisor. Ex. 18, TARGET_NF-83. Defendant repeatedly cautions their ETL-APs in writing (and all other ETLs for that matter) that they are at-will employees and therefore it can terminate | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** The document speaks for itself. |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | Improper legal argument. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| their employments at any time for any reason. Ex. 18, TARGET_NF-69, TARGET_NF-80. Specifically, it warns, | | |
| Target will not, and team members should not, interpret any verbal or written statement, policies, practices or procedures, including this handbook, as altering their at-will status. In addition, Target practices or procedures do not guarantee employment for any particular length of time or limit how that employment may end. | | |
| *Id.* Defendant also advises its ETL-APs that it will extend promotion opportunities to those who "perform consistent with our expectations of excellence." *See* Ex. 18, TARGET_NF-81 (emphasis added)." Spivak Decl., ¶ 21. | | |
| 6. "Plaintiff completed two self-audits as an ETL-AP in which she stated she spent (1) no time performing many of the managerial tasks, (2) significantly different portions of her worktime performing different managerial tasks year to year, and (3) absolutely no time on nonmanagerial tasks. *See* Exs. 23, 24. Plaintiff also stated in both audits to have spent no time "managing store facilities as [leader-on-duty ("LOD")]." *See* Exs. 23, 24. Defendant did not follow up with Plaintiff about any of these | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | Improper legal argument. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| irregularities, nor did Defendant subject her to counseling or discipline. *See* DNF, ¶ 14. Defendant does not investigate such irregularities. *See* MB, 105:3-107:7." Spivak Decl., ¶ 22. | | |
| 7. "Defendant instructs its ETL-APs that it expects them to spend more than 50% of their time on "managerial" tasks and duties. In the same vein, Defendant instructs its ETL-APs that it is "critical" that they "continually" spend substantially more than 50% of their time on leadership responsibilities instead of hourly tasks. However, Defendant provides very little explanation of what it means by "managerial" and "leadership," other than to offer additional ambiguous terms such as "managing performance," "rewarding excellence," "managing guest issues." Ex. 18, TARGET_NF-83. Defendant tasks at least one category of hourly employee, the TLs, with a host of LOD tasks that they share with the ETL-APs and that ETL-APs perform for most of their worktime. Defendant trains all of its ETL-APs to perform LOD work and expects them to perform such work "as trained." Ex. 18, TARGET_NTF-108. Whether hourly work is considered exempt or nonexempt work depends on its | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | Improper legal argument and conclusion. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| purpose. *See* Plaintiff's Memorandum of Points and Authorities, Section VI(C)(2)(b). However, Defendant does not explain or limit the purpose of the ETL-APs performing hourly work. Rather, Defendant implies that it expects all of its leaders to have the freedom to perform hourly or manual work as the need arises and to the extent they deem necessary. Further, Defendant does nothing to eliminate the confusion that must result from these contrary statements." Spivak Decl., ¶ 23. | | |
| 8. "Defendant's statements appear to be at odds with its instruction to its ETL-APs to occasionally perform "hourly" tasks and duties. Again, Defendant provides little explanation of what it means by "hourly" other than four examples: zoning, stocking, cashiering, and unloading trailers and moving boxes. Ex. 18, TARGET_NF-83. Does "hourly" refer to duties that Defendant tasks its hourly TLs with performing such as the duties of Defendant's LODs? Defendant does not say, though there is no dispute that Defendant requires its ETL-APs to perform such hourly TL duties throughout most of the workweek. *See* Ex. 27; DNF, ¶¶ 4-5, AA, ¶¶ 3-4, DEA, ¶¶ 3-4, RH, ¶¶ 3-4, DJ, ¶¶ 3-4, SL, ¶¶ 3-4, NR, ¶¶ 3-4, SS, ¶¶ 3-4, AS, ¶¶ 3-4, MS, ¶¶ 3-4. | Improper legal argument and conclusion. | **Sustained.** |
| | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| Defendant also advises the ETL-APs in writing that it expects them to immediately clean up spills, pick up objects on the floor, and keep the floor clean and dry. Ex. 18, TARGET_NF-109. Defendant does not explain, however, how they can avoid performing these functions themselves when there are insufficient hourly employees available to delegate them to. Hence, whether Defendant views "immediately cleaning spills" and like duties as exempt or nonexempt is at best unclear. The Court must make a determination of Defendant's expectations for these duties for an ETL-AP who contends she is not-exempt." Spivak Decl., ¶ 24. | | |
| 9. "There is no doubt that Defendant informs its ETL-APs that failure to spend the majority of their worktime on "managerial" and "leadership" duties is cause for an immediate report to their supervisor. Ex. 18, TARGET_NF-83. Whether Defendant's characterization of the duties as "managerial" or "leadership" equates to exempt or non-exempt is the primary issue before this Court. Regardless, Defendant makes abundantly clear to its ETL-APs that it expects them to state in the self-audits that they perform what Defendant deems "managerial" duties most of the time – whether or not they | Improper legal argument and conclusion. | **Sustained.** |
| | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| agree with Defendant's depictions of duties as "managerial" and whether they perform exempt duties more often than not. To ensure the ETL-APs assign most of their time to the vague "managerial" duties listed in the self-audit, Defendant offers a powerful incentive: In the Exempt Employee Handbook, Defendant cautions the ETL-APs: | | |
| Target can terminate the employment relationship at anytime. | | |
| Target can terminate the employment relationship for any reason. | | |
| Target verbal and written statements do not prevent Target from terminating the employment relationship at any time or for any reason. | | |
| Target's procedures do not guarantee employment or how Target will end it. | | |
| *See* Ex. 18 (TARGET_NF-000069). Defendant also advises its ETL-APs that it will extend promotion opportunities to those who "perform consistent with our expectations of excellence." Ex. 18, TARGET_NF-81 (emphasis added). These statements eliminate any faith that an ETL-AP may place in the assurance of Defendant's self-audit cover letter that Defendant will not | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| take "adverse action" against him for his self-audit responses. Ex. 31. An ETL-AP would be a fool to assign any significant amount of time to "hourly" tasks in the self-audit whether or not he agrees with Defendant's depiction of tasks as "hourly" and "managerial." Ex. 18, TARGET_NF-69, TARGET_NF-80." Spivak Decl., ¶ 25. | | |
| 10. "While Defendant offers protection from adverse action to the ETL-APs, there is no evidence of assurances to their STL supervisors that Defendant will not punish them for their subordinates' responses to the audit. Therefore, the wise STL will encourage his subordinate ETL-AP to assign higher percentages of worktime to the self-audits "managerial" tasks than to the "hourly" tasks. It can be no surprise that Defendant obtained audit results that ETL-APs spend most of their time on "managerial" duties. *See* MB, 108:18-109:4." Spivak Decl., ¶ 26. | Improper legal argument and conclusion. | **Sustained** |
| | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Sustained.** |
| 11. "There are additional reasons why the self-audit results are not reliable proof of Defendant's expectations. The tasks Defendant lists in the audits are often generic and lacking explanation. The audit format does not permit the | Improper legal argument and conclusion. | **Sustained.** |
| | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| ETL-APs to state that they concurrently perform "managerial" and "hourly" tasks, e.g. training subordinates on zoning while performing zoning duties. Additionally, in the self-audits, Defendant directs the ETL-APs to state their "managerial" duties in advance of the non-managerial duties." Spivak Decl., ¶ 27. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Sustained.** |
| 12. "Defendant makes no attempt to check on irregularities in the ETL-AP self-audits as long as the ETL-APs state that they spend more than 50% of their worktimes performing "MANAGERIAL Job Duties." Plaintiff completed two self-audits as an ETL-AP in which she stated to have spent (1) no time performing many of the managerial tasks, (2) significantly different portions of her worktime performing different managerial tasks year to year, (3) absolutely no time on nonmanagerial tasks, and (4) no time "managing store facilities as LOD" (even though Defendant scheduled all ETL-APs to perform LOD duties at least three out of their five workdays). *See* Exs. 23, 24. Despite her impossible answers, Defendant did not follow up with Plaintiff about her self-audits. DNF, ¶ 14. Clearly, Defendant's only interest in the self-audits is to conjure a defense of their overtime-exempt classification of the | Improper legal argument and conclusion. | **Sustained.** |
| | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |

| SPIVAK DECLARATION | | |
| --- | --- | --- |
| **Testimony** | **Objections** | **Ruling** |
| ETL-APs. Therefore, the self-audits cannot be relied upon to accurately represent how the ETL-APs are spending their worktime and the Court should not accept at face-value Defendant's depictions of "hourly" and "managerial." Further, Defendant cannot rely on the self-serving self-audits to show that its misclassification of the ETL-APs was not willful, knowing, or intentional." Spivak Decl., ¶ 28. | | |
| 13. "Mr. Brewer testified that, to his knowledge, this is a document that Defendant defines its leadership expectations in. *See* MB, 72:7-16. The document is made available to Defendant's employees on its intranet, Defendant requires ETLs to "adapt[] appropriately to competing demands and shifting priorities"; "accept[] responsibility for team or work center performance"; and "take[] personal responsibility to make decisions and take action." Ex. 20. Similarly, Defendant requires TLs to "deal[] constructively with mistakes and problems"; "'confront[] difficult issues to ensure they are addressed"; "willingly offer[] help or assistance to others when needed"; and "work[] steadily at repetitive or routine tasks to | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| make sure they are completed." *Id*." Spivak Decl., ¶ 30. | | |
| 14. "Mr. Brewer testified that, to his knowledge, this is part of Defendant's LOD training material which is provided to the ETL-APs during their training. *See* MB, 185:6-186:4." Spivak Decl., ¶ 32. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 15. "A true and correct copy of a spreadsheet prepared by Plaintiff's counsel which compares Defendant's 2015 and 2016 audit documents concerning Plaintiff (Ex. 23, TARGET_NF-000010) based on Plaintiff's counsel's review is attached as **Exhibit 23.**" Spivak Decl., ¶ 33. | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | Improper legal argument. | **Overruled.** |
| 16. "Defendant annually requires its ETL-APs to complete a survey that asks them to state the percentage of their worktime spent on a list of duties. *See* Ex. 14, 95:4-8. Defendant provides the same survey to all ETL-APs. *See* Ex. 14, 97:20-25. In 2016, the list contained 49 duties, of which 35 "MANAGERIAL Job Duties" were listed first, followed by 14 "NON-MANAGERIAL Job Duties" . . . Defendant lists several generic duties under "MANAGERIAL Job Duties" which it fails to describe, such as "Developing and ensuring adherence to safe and secure programs and practices | Lacks personal knowledge (Fed. R. Evid. 602). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | Improper legal argument. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| Testimony | Objections | Ruling |
| (including partnering with STL and [LOD] regarding premise and perimeter security, tracking safe and secure issues, identifying store safe and secure trends, developing and implementing response plans, making sure all team members are trained and certified for their positions)" and LOD duties. *Id.* Under "NON-MANAGERIAL Job Duties," Defendant anticipates that the ETL-APs to will unload, move, stock, and zone merchandise, serve guests, ring up sales and handle cash, clean the store, perform clerical tasks, and perform non-exempt AP tasks such as surveillance, apprehension, affixing alarm tags, locking peghooks, counting of merchandise, and installing surveillance cameras. The audit does not permit the ETL-APs to state that they concurrently perform "managerial" and "hourly" tasks, e.g. training subordinates on zoning while performing zoning duties. *Id.*" Spivak Decl., ¶ 34. | | |
| 17. "Defendant also requires the ETL-APs to "ensure the goals and expectations are satisfied"; "quickly identify and implement solutions to any in-stock, presentation, pricing, signing or safety issues"; "Complete additional duties as needed or required"; "Model ... The Vibe service behaviors"; | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |

16

| | Testimony | Objections | Ruling |
| --- | --- | --- | --- |
| | "model ... guest service behaviors"; "respond quickly to guest requests"; "ensure all areas of the store are in stock and zoned to grow sales"; "Use verbal and physical de-escalation techniques to minimize the threats to guests and team members"; and "Provide a clean, safe and secure shopping and working environment." *See* Ex. 24. Defendant does not inhibit the ETL-APs from performing such duties as need requires. *Id.*" Spivak Decl., ¶ 35. | Improper legal argument. | **Sustained.** |
| 18. | "Mr. Brewer testified that, to his knowledge, this document was updated on February 25, 2016 and made available to the ETL-APs on Defendant's intranet. *See* MB, 59:13-61:2." Spivak Decl., ¶ 37. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 19. | "Defendant testified that it expects its ETL-APs to work at least 10 hours per workday and about 50 to 60 hours in a workweek performing the tasks it assigns to them. *See* MB, 45:3-7. In the ETL-AP job descriptions, Defendant states under "Availability," "Flexible work schedule (e.g., nights, weekends, holidays, and long hours) and regular attendance necessary."; Ex. 26, TARGET_NF-60. Defendant uniformly classifies the ETL-APs as exempt, salaried employees and does not pay additional wages to any of them when they work in excess of eight hours in a day or 40 hours | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| | | Irrelevant and immaterial (Fed. R. Evid. 401). | **Overruled.** |
| | | Improper legal argument and conclusion. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| in a week. *See* DNF, ¶ 2, AA, ¶ 2, DEA, ¶ 2, RH, ¶ 2, DJ, ¶ 2, SL, ¶ 2, NR, ¶ 2, SS, ¶ 2, AS, ¶ 2, MS, ¶ 2; e.g., Exs. 12, 34. Defendant maintains records of the ETL-APs' work schedules which shows the hours it expects them to work and the length and frequency of LOD shifts. *See*, e.g., Exs. 27, 32. Defendant's work schedules do not show meal or rest periods for its ETL-APs. Defendant has no records of ETL-APs meal and rest periods. In this policy and scheduling vacuum, it is no surprise that ETL-APs take "working" rest and meal periods." Spivak Decl., ¶ 38. | | |
| 20. "Plaintiff testified that, to her knowledge, these are the text message conversations between Plaintiff and STL Katherine Clark. NF, 258:18-259:2." Spivak Decl., ¶ 41. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 21. "Mr. Brewer testified that, to his knowledge, this is an email Defendant sends out with the self-audit. *See* MB, 91:20-92:22." Spivak Decl., ¶ 43. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 22. "Ms. Faraji declared that, to her knowledge, this is the email that she sent to Natalie Velazquez on February 29, 2016 with the monthly Executive Schedule for March of 2016 attached. *See* DNF, ¶ 24." Spivak Decl., ¶ 44. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 23. "Mr. Brewer testified that, to his knowledge, Defendant lists | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |

| | Testimony | Objections | Ruling |
|---|---|---|---|
| | in this document the daily tasks that it expects its ETL-APs and STLs to perform. *See* MB, 196:21-197:14." Spivak Decl., ¶ 45. | | |
| 24. | "Plaintiff contends that Defendant willfully, intentionally, and knowingly failed to pay the ETL-APs all final wages and provide them with accurate wage statements due to its continued classification of the ETL-APs in the wake of the *Gifford* lawsuit and its multiple declarations of ETLs showing they performed hourly work most of the time." Spivak Decl., ¶ 54. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** Also improper argument. |
| | | Irrelevant and immaterial (Fed. R. Evid. 401). | **Sustained.** |
| 25. | "Mr. Brewer testified that, to his knowledge, this is Defendant's LOD check list and is made available to the positions that can serve as LODs. *See* MB, 198:11-20." Spivak Decl., ¶ 55. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 26. | "Defendant outlines and requires ETL-APs to follow detailed policies and procedures. *See, e.g.,* Exs. 43, 44. Although ETL-APs prepare performance evaluations, Defendant requires STLs to review each evaluation, and others at Target determine their uniform structure and criteria are dictated by corporate and uniform across stores. *See, e.g.,* Ex. 19; see MB, 182:1-183:1. ETL-APs do not have the discretion to change the form or | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** |
| | | Improper legal argument and conclusion. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| criteria for the evaluation of their employees. MB, 182:1-183:1. Similarly, Defendant's corporate office outlines "very specific" AP policies (referred to as "AP Directives") and requires its exempt and nonexempt AP employees to follow them. MB, 154:13-20, 223:21-224:2. ETL-APs have little or no discretion to deviate from the set procedures in any fashion. Indeed, Defendant reprimands those who fail to follow corporate procedures even when an ETL-AP determines that it is necessary. *See, e.g.*, Ex. 28. Further, the STLs and Asset Protection Business Partners ("APBPs") closely monitor the ETL-APs and assign them specific tasks. *See, e.g.*, Ex. 29, NF-94; Exs., 49, 50; see DNF, ¶ 9, AA, ¶ 8, DEA, ¶ 8, RH, ¶ 8, DJ, ¶ 8, SL, ¶ 8, NR, ¶ 8, SS, ¶ 8, AS, ¶ 8, MS, ¶ 8." Spivak Decl., ¶ 58. | | |
| 27. "Mr. Brewer testified that, to his knowledge, Defendant lists in this document "specific items [it] want[s] [the LOD] to look at" during the sales floor walk. *See* MB, 225:22-226:16." Spivak Decl., ¶ 60. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 28. "A true and correct copy of a text message from STL Jennifer Silva, bates labeled by Eduardo Arvilla as EA000180, is attached as **Exhibit 48.** Mr. Arvilla testified that, to his knowledge, these are text | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| messages exchanged between him and Ms. Silva. EA, 383:12-384:5; 392:12-393:9." Spivak Decl., ¶ 62. | | |
| 29. "A true and correct copy of an email from STL Jennifer Silva, bates labeled by Eduardo Arvilla as EA000242, is attached as **Exhibit 49.** Mr. Arvilla testified that, to his knowledge, this was an email Ms. Silva sent to all ETLs in the store. EA, 399:12-399:17." Spivak Decl., ¶ 63. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |
| 30. "To the best of my knowledge, neither Plaintiff nor I have any conflicts of interest with the absent class members in this case." Spivak Decl., ¶ 64. | Lacks personal knowledge (Fed. R. Evid. 602); Lacks foundation, speculation (Fed. R. Evid. 701, 702, 901). | **Overruled.** |
| | Improper legal conclusion. Whether the declarant or plaintiff has any conflicts of interest with the putative class members is a legal issue for the Court to decide, not a fact. | **Overruled.** |
| 31. "In addition to the duties stated in Plaintiff's Memorandum of Points and Authorities (Section VI(C)), the Court must also determine whether the following duties are exempt or nonexempt:<br><br>1)   Lead with respect, empathy, confidence and courage (Ex. 26); | Legal argument and conclusion. | **Sustained.** |

| SPIVAK DECLARATION | | |
|---|---|---|
| Testimony | Objections | Ruling |
| 2) Act with integrity and lead by example (Ex. 26); | | |
| 3) Be accountable for. your performance and continuously improve; invest time in your development by actively seeking opportunities to grow and asking for feedback from team, peers and leaders (Ex. 26); | | |
| 4) Be present and on time as scheduled (Ex. 26); | | |
| 5) Foster an inclusive, diverse, safe and secure culture; create an environment of openness, trust and recognition and reward great performance (Ex. 26); | | |
| 6) Help assess, select and retain top talent at the hourly team member and team leader level and develop a talented team; plan for right person, right place, right time (Ex. 26); | | |
| 7) Hold team members and team leaders accountable for completing required training and assess training progress (Ex. 26); | | |
| 8) Invest time in developing and holding others accountable by teaching, coaching, training and delivering performance feedback (Ex. 26); | | |
| 9) Effectively execute and lead the team through new initiatives and change (Ex. 26); | | |
| 10) Empower the team to make the right decisions for | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| Target, our guests and our team (Ex. 26); | | |
| 11) Analyze schedules to ensure proper staffing levels to meet business needs (Ex. 26); | | |
| 12) Lead and model a compliance culture that mitigates financial and legal risk (Ex. 26); | | |
| 13) Protect confidential guest and team member information (Ex. 26); | | |
| 14) Drive a safety culture focused on incident and injury prevention by identifying, reporting and responding to all safety concerns and trends in a timely manner; modeling safe behaviors and encouraging team members through coaching and recognition; ensuring productivity isn't prioritized over safety (Ex. 26); | | |
| 15) Support well-being initiatives; drive advocacy and adoption of wellness for team members, guests and community (Ex. 26); | | |
| 16) Set challenging goals with clear outcomes and establish productive routines to ensure progress (Ex. 26); | | |
| 17) Evaluate performance through metrics and financials; identify the root causes of problems and develop and implement action plans to achieve performance goals; | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| hold team leaders accountable to doing the same (Ex. 26); | | |
| 18)  Educate team and guests about our in-store and digital offerings, services and loyalty programs (Ex. 26); | | |
| 19)  Educate team about Target policies and processes (Ex. 26); | | |
| 20)  Use all available resources, including company communication, to manage and prioritize workload, provide clear direction to the team, educate the team about weekly and seasonal promotions and special events, and deliver superior execution through Best Practices (Ex. 26); | | |
| 21)  Champion new technology and processes to grow sales and incorporate digital routines into store culture (Ex. 26); | | |
| 22)  Maintain brand standards in all areas of the store, including offstage areas (Ex. 26); | | |
| 23)  Lead the team to follow all safety guidelines, operating procedures, and product freshness and quality standards (Ex. 26); | | |
| 24)  Appropriately use and care for in-store and personal protective equipment; ensure all items are accounted for per equipment control guidelines (Ex. 26); | | |
| 25)  Educate the team about key business focuses and | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| measurements, and how operational procedures impact shortage and profitability (Ex. 26); | | |
| 26) Leverage appropriate escalation tools to solve process and/or. guest issues; notify leader as needed (Ex. 26); | | |
| 27) Be financially responsible; prioritize and drive continuous improvement in total store profitability and company Earnings Before Interest and Taxes (EBIT) (Ex. 26); | | |
| 28) Ensure the team is productive, providing great service and the store is meeting brand expectations (Ex. 26); | | |
| 29) Build and lead a safe and secure culture, focused on physical security including key and alarm protected areas, incident prevention and incident response by influencing store team members (Ex. 26); | | |
| 30) Lead a shortage-awareness culture and reduce shortage by resolving my Shortage Dashboard exceptions and ensuring merchandise protection equipment is being appropriately used (Ex. 26); | | |
| 31) Lead a preventative theft culture by proper assigning of the TPS Daily Assignment Cards based on theft activity and shortage results (Ex. 26); | | |
| 32) Lead and execute reporting analysis and intelligence to respond to theft trends to | | |

| | SPIVAK DECLARATION | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| resolve repetitive issues of internal and external theft trends (Ex. 26); | | |
| 33)  Conduct apprehensions strictly adhering to AP Directives (Ex. 26); | | |
| 34)  Lead the execution of safety programs and best practices to reduce team member and guest safety incidents and injuries (Ex. 26); | | |
| 35)  Partner with store and district leadership during security incidents or crisis situations to minimize incident impact (Ex. 26); | | |
| 36)  Lead compliance regulation programs and assessments as directed by leadership (Ex. 26); | | |
| 37)  Ensure vendors are adhering to all check-in guidelines, are wearing name badges and are operating only during approved time (Ex. 26); | | |
| 38)  Build partnerships with local Law Enforcement and Emergency Management Agencies by representing and encouraging store team participation in community events (Ex. 26); | | |
| 39)  Inspecting and monitoring (including monitoring sales and/or payroll, asking team members about productivity or their tasks, assessing conditions and opportunities in the sales | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| floor, backroom or other areas of the store) (Ex. 24); | | |
| 40) Analyzing Operational Performance (including analysis of MyPerformance and other operational reporting, development of action plans to address operational opportunities, implement follow-up on DTL and/or leadership visits, completion of selfassessments) (Ex. 24); | | |
| 41) Instructing and directing (including prioritizing and assigning tasks to your teams) (Ex. 24); | | |
| 42) Training, developing, providing recognition and coaching your team members (including team huddles, chat sessions, team development, overseeing and participating in training of new team members, conducting and facilitating New Team Member Orientation, demonstrating skills that team members need to perform their duties, instructing and monitoring team members regarding appropriate meal periods and rest breaks) (Ex. 24); | | |
| 43) Participating in leadership learning groups and training groups (Ex. 24); | | |
| 44) Planning and scheduling (including attending leadership meetings, statuses, planning for transitions, key ads and special events, setting priorities and | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| creation of task lists, reviewing and analyzing reports, communications from HQ or leaders, scheduling of team members) (Ex. 24); | | |
| 45) Managing merchandise transitions and/or adjacencies (including transition planning, scheduling, recapping/follow up). This does not include stocking. (Ex. 24); | | |
| 46) Managing in-stocks (including research and DSD store order responsibilities, pricing and presentation). This does not include stocking. (Ex. 24); | | |
| 47) Managing stocking functions, including out-of-stock issues (including ensuring timely execution of replenishment, receiving, reverse logistics and backroom processes to ensure the salesfloor is in stock) (Ex. 24); | | |
| 48) Providing performance feedback (feedback on completion of daily assignments, attending contribution meetings, writing and delivering reviews, using the counseling and corrective action process) (Ex. 24); | | |
| 49) Identifying staffing needs (including developing a staffing forecast, recruiting, reviewing applications, interviewing and making or participating in decisions related to hiring, | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| promotions, and terminations) (Ex. 24); | | |
| 50)   Managing guest issues (including dealing with guests who ask to speak to a manager and/or a guest who is referred by a team member because of a special issue). This does not include the serving of guests. (Ex. 24); | | |
| 51)   Managing vendors (including communicating space needs and inventory information) (Ex. 24); | | |
| 52)   LOD managerial responsibilities/managing store facilities (including managing guest expectations, identifying opportunities and creating solutions) (Ex. 24); | | |
| 53)   Managing profit (including controlling payroll) (Ex. 24); | | |
| 54)   Managing special issues (including conducting investigations) (Ex. 24); | | |
| 55)   Managing legal compliance (including partnering with STL and ETLs to ensure that teams are following meal period and rest break policy requirements, adhering to all minor work rules, ensuring all team members are paid properly and timely) (Ex. 24); | | |
| 56)   Managing team development (including ensuring all team members understand and execute their Core Roles, fostering a learning | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| environment by leading training and development programs, identifying and supporting potential promotion candidates) (Ex. 24); | | |
| 57) Managing "team brand" presentation (including ensuring three Team Colors Policy is consistently applied to all team members and name badges are worn) (Ex. 24); | | |
| 58) Managing employee relations (including responding to team member concerns and issues promptly, investigating issues thoroughly and neutrally, escalating and partnering with HRBP as appropriate, administering leave of absence policies and processes in partnership with Hewitt, managing Workers' Compensation) (Ex. 24); | | |
| 59) Managing team performance (including completing accurate assessments of performance and potential, aiding development of personal performance, assisting leaders with coaching and corrective action, serving as a third-party participant in performance conversations, assisting STL in the development of ETLs, Team Leaders and Interns, facilitating Contribution Meetings) (Ex. 24); | | |
| 60) Ordering supplies (including HR supplies, New | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| Hire Packets, other office supplies) (Ex. 24); | | |
| 61)   Retaining Team Members (including using company retention programs to monitor store culture and discussing patterns with HRBP and STL, analyzing turnover rates and developing plans to reduce it, ensuring that teams are giving recognition, soliciting team member feedback through surveys, chat sessions, facilitating open communication within the store) (Ex. 24); | | |
| 62)   Ensuring all AP teams and LODs establish and maintain a safe and secure culture (including training AP teams on safe and secure programs, identifying and discussing safe and secure issues particular to your store, addressing safe and secure issues immediately, monitoring all safety-related equipment to ensure proper functioning and following-up on needed repairs, sharing and establishing partnerships with the AP mission) (Ex. 24); | | |
| 63)   Minimizing theft and fraud (including utilizing reports, protection programs, intelligence and equipment to identify theft and fraud issues, develop and implement solutions that minimize theft and maximize sales) (Ex. 24); | | |
| 64)   Managing shortage issues (including identifying shortage | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| issues and participating in developing a plan to address them) (Ex. 24); | | |
| 65) Managing crisis situations (including robberies or violence-related incidents and communicating to team members regarding how to handle these types of situations) (Ex. 24); | | |
| 66) Impacting store profit by prioritizing company focus areas (including providing direction to team members on focus areas and opportunities that exist at your location and how they can impact profit/shortage) (Ex. 24); | | |
| 67) Managing merchandise protection programs to minimize theft and maximize sales (including providing direction, researching and providing answers to LODs to manage the program and to team members to properly execute the program) (Ex. 24); | | |
| 68) Managing cash (including researching cash shortages, conducting investigations as necessary, partnerships with the Cash Escalation Team). This does not include ringing up sales, (Ex. 24); | | |
| 69) Building relationships necessary to ensure safety (including partnering with other store's AP, local law enforcement, community agencies and other retailers to | | |

| SPIVAK DECLARATION | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| share intelligence data and minimize or mitigate investigative issues and close cases) (Ex. 24); | | |
| 70)  Managing overall store safeness and security in the store (including partnering with other ETLs on theft issues, monitoring alarms, key control, physical security compliance) (Ex. 24); | | |
| 71)  Overnight or early mornings to conduct surveillances and work with the overnight team (including conducting surveillances as investigations dictate, conducting required early morning/overnights to identify and resolve any safeness or AP issues that exist directly with the team and leadership) (Ex. 24); and | | |
| 72)  Managing store facilities as LOD (including managing guest expectations of Fast Service and 60 second response time) (Ex. 24)." Spivak Decl., ¶ 74. | | |
| 32. "Ms. Faraji declared that, to her knowledge, this is the time sheet that she completed and submitted to Target on December 5, 2014 as an ETL-AP trainee. *See* DNF, ¶ 3." Spivak Decl., ¶ 87. | Inadmissible hearsay (Fed. R. Evid. 801). | **Sustained.** |

## B.    Target's Motion to Strike Putative Class Member Declarations

Target also moves to strike portions of the declarations of Plaintiff (ECF No. 49-2) and putative class members, Eduardo Arvilla, Robert Hodson, Matthew Sullentrop, Steven Lopes, Sharad Sabharwal, Dante Jones, Absalon Alonso, Andrew Sherwin, and Nolan Rak (ECF No. 49-3, Exs. 53–61), which Plaintiff submitted in support of her Motion for Class Certification.   (ECF No. 71.)   The Court **OVERRULES** most of Target's objections, with the exception of the following:

| FARAJI DECLARATION (ECF 49-2) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 5. "My managers at Target, including STLs Linda Roebuck, Katherine Clarke, and Jamie Schossow, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STLs Linda Roebuck, Katherine Clarke, and Jamie Schossow discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, how quickly I responded was one of Target's criteria for measuring my work | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for her conclusion that her managers "knowingly" required the declarant to work through breaks. |

| FARAJI DECLARATION (ECF 49-2) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| performance." Faraji Decl., ¶ 7. | | |

| ARVILLA DECLARATION (ECF 49-3, Exh. 53) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 19. "My managers at Target, including Store Team Leaders ("STLs") Jennifer Paige Silva, Tara Esparza, Katherine Clark, and Isela Navarro, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. Store Team Leaders ("STLs") Silva, Esparza, Clark, and Navarro and ETL-AP Collingwood discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" required the declarant to work through breaks. |

| ARVILLA DECLARATION (ECF 49-3, Exh. 53) | | |
|---|---|---|
| Testimony | Objections | Ruling |
| performance." Arvilla Decl., ¶ 6. | | |

| HODSDON DECLARATION (ECF 49-3, Exh. 54) | | |
|---|---|---|
| Testimony | Objections | Ruling |
| 31. "My managers at Target, including Store Team Leaders ("STLs") Sam Dukes, John Williams and Sean Shugre, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STLs Sam Dukes, John Williams and Sean Shugre and ETL-AP Mike Eveilo discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance." Hodsdon Decl., ¶ 6. | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" required the declarant to work through breaks. |

| SULLENTROP DECLARATION (ECF 49-3, Exh. 55) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 42 | "My managers at Target, including Store Team Leaders ("STLs") Amber Loranza, and Manny (unknown last name), knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STLs Amber Loranza, and Manny (unknown last name) and ETL-AP Richard Alvarez discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance."  Sullentrop Decl., ¶ 6. | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" required the declarant to work through breaks. |

| LOPES DECLARATION (ECF 49-3, Exh. 56) | | |
|---|---|---|
| | Testimony | Objections | Ruling |
| 53. | "My managers at Target, including Store Team Leader ("STL") Brandon Eaton, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STL Brandon Eaton discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance." Lopes Decl., ¶ 6. | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" required the declarant to work through breaks. |

| SABHARWAL DECLARATION (ECF 49-3, Exh. 57) | | |
|---|---|---|
| | Testimony | Objections | Ruling |
| 64. | "My managers at Target, including Store Team Leaders ("STLs") Richard (last name unknown), Merideth Klauser, Lydia Stroup, Jasenka (last name | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion |

| SABHARWAL DECLARATION (ECF 49-3, Exh. 57) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| unknown), Gina Steffen, Stephanie Shinok, Salvador Vela, Stanton Johnson, and Grace Kwon, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STLs Richard (last name unknown), Merideth Klauser, Lydia Stroup, Jasenka (last name unknown), Gina Steffen, Stephanie Shinok, Salvador Vela, Stanton Johnson, and Grace Kwon discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance." Sabharwal Decl., ¶ 6. | | that his managers "knowingly" required the declarant to work through breaks. |

| JONES DECLARATION (ECF 49-3, Exh. 58) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 75. "My managers at Target, including Store Team Leader ("STL") Tyler Hersome, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STL Tyler Hersome discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance." Jones Decl., ¶ 6. | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" required the declarant to work through breaks. |

| ALONSO DECLARATION (ECF 49-3, Exh. 59) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| 86. "My managers at Target, including Store Team Leaders ("STLs") Gary (last name unknown) and Flavio Garzon knowingly required me to work through my meal and rest periods. While on duty, my managers required me | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" |

| ALONSO DECLARATION (ECF 49-3, Exh. 59) | | |
| --- | --- | --- |
| **Testimony** | **Objections** | **Ruling** |
| to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. STLs Gary (last name unknown) and Flavio Garzon and ETL-AP Athena Lemus discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance." Alonso Decl., ¶ 6. | | required the declarant to work through breaks. |

| SHERWIN DECLARATION (ECF 49-3, Exh. 60) | | | |
| --- | --- | --- | --- |
| | **Testimony** | **Objections** | **Ruling** |
| 97. | "My managers at Target, including Store Team Leader ("STL") Marie Duenow, knowingly required me to work through my meal and rest periods. While on duty, my managers required me to have my assigned handheld transceiver within reach and hearing and respond to calls immediately at all times. | Lacks foundation, conclusory, speculation (Fed. R. Evid. 702, 901). | **Sustained.** The declarant does not provide any basis for his conclusion that his managers "knowingly" required the declarant to work through breaks. |

| SHERWIN DECLARATION (ECF 49-3, Exh. 60) | | |
|---|---|---|
| **Testimony** | **Objections** | **Ruling** |
| STL Duenow discouraged me from leaving the store or engaging in activities that would prevent me from monitoring the transceiver, including breaks, and at all other times. According to Target management employees who trained me and supervised me, my level of responsiveness was one of Target's criteria for measuring my work performance." Sherwin Decl., ¶ 6. | | |

**C.  Target's Motion to Strike _Gifford_ Complaint and Declarations Submitted with Plaintiff's Request for Judicial Notice**

In support of the Motion for Class Certification, Plaintiff requested the Court take judicial notice of a number of documents filed in a federal case in Minnesota, _Gifford et al. v. Target Corp._, No. 10-cv-1194 (D. Minn.).  Target opposes the request for judicial notice and moves to strike the _Gifford_ documents Plaintiff filed.  Alternatively, Target asks that if the Court deny its request to strike, that the Court also consider the 359 declarations Target gathered in the _Gifford_ case.  (ECF No. 72.)

Pursuant to Federal Rule of Evidence 201, a Court may judicially notice a fact that is not subject to reasonable dispute because it is generally known within the Court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Plaintiff requests the Court take judicial notice of the substance a number of declarations filed in the _Gifford_ action, a case which also challenged Target's classification of ETL-APs as exempt.  The Court finds that the substance of the Complaint and the declarations in the _Gifford_ action do not qualify as judicially noticeable under Rule 201.  Target strongly disputes the substance of the

allegations in the Complaint and the Declarations, and many of those allegations are at issue in this case. Therefore, the Court **GRANTS** Target's Motion to Strike the *Gifford* Complaint and Declarations (ECF No. 72), and declines to take judicial notice of those documents. The Court also declines to consider the declarations Target submitted in the *Gifford* action.

**D.     Plaintiff's Objections to Target's Evidence**

Plaintiff also objects to certain evidence Target submits in opposition to the Motion for Class Certification. (ECF No. 79-3.) Specifically, Plaintiff objects to portions of the declarations of Natalie Argueta (ECF No. 69-1, Tab 1), Michael Avelino (*id.* Tab 2), Chandler Bobin (*id.* Tab 3), Russell Bruce (*Id.* Tab 4), Andria Chavez (*id.* Tab 5), Tyler Estrada (*id.* Tab 6), Kristin Farr (*id.* Tab 7), Christina Galvan (*id.* Tab 8), Nicholas Hagemann (*id.* Tab 9), Gregory Hammer (*id.* Tab 10), Cerae Harris (*id.* Tab 11), Stephanie Hernandez (*id.* Tab 12), Jonathan Johnson (*id.* Tab 13), Tyler Kennedy (ECF No. 69-2, Tab 14), Lester King (*id.* Tab 15), Michael Kinnaird (*id.* Tab 16), Desiree McGowan (*id.* Tab 17), Chandra Mogan (*id.* Tab 18), Nicole Nicolai (*id.* Tab 19), Karim Oscoff (*id.* Tab 20), Adolfo Pando (*id.* Tab 21), Oscar Perez (*id.* Tab 22), Frederick Rutherford (*id.* Tab 23), Rocio Sierra (*id.* Tab 24), Alexander Stong (*id.* Tab 25), Leanne Tucker (*id.* Tab 26), Tarek Wally (*id.* Tab 27), Daniel Zamora (*id.* Tab 28), Paul F. White, Ph.D (ECF No. 67-1), Michael Brewer (ECF No. 65-2), Tonya Lizakowski (ECF No. 65-5), Ellie Cheung (ECF No. 62), Jennifer Gallardo (ECF No. 64), Stacy Puza (ECF No. 63), and John Williams (ECF No. 65-3). The Court has reviewed each of Plaintiff's objections, and Target's responses, and **OVERRULES** Plaintiff's objections.

The Court notes that Plaintiff objected to the entirety of the declarations from McGowan, Perez, and Wally, because Target originally filed them without the declarant's signatures. Target later provided the signature pages and filed a notice of errata. (ECF No. 81.)

Plaintiff also objects to portions of the declarations Target requested, in the alternative, for the Court to review from the *Gifford* action. Because the Court refuses to consider any declarations from the *Gifford* case, the Court declines to rules on Plaintiff's objections to those declarations.

## IV.    CONCLUSION

The Court's rulings on Target's pending Motions to Strike (ECF Nos. 70, 71, 72) and Plaintiff's evidentiary objections are provided above.

**IT IS SO ORDERED.**

April 30, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**