**O**

# United States District Court
# Central District of California

NEDA FARAJI,

                Plaintiff,

    v.

TARGET CORPORATION; DOES 1 through 50, inclusive,

                Defendants.

Case № 5:17-CV-00155-ODW-SP

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [45]**

## I.   INTRODUCTION

Plaintiff Neda Faraji moves to certify this putative class action seeking relief for Defendant Target Corporation's failure to pay overtime wages and provide meal and rest periods to Plaintiff and Target's other salaried California executive team leaders in asset protection ("ETL-APs").  Plaintiff argues that Target incorrectly classified its ETL-APs as exempt executives and administrators.  Target disputes this contention and opposes the Motion for Class Certification.  After a thorough review of the parties' submissions and for the following reasons, the Court **DENIES** Plaintiff's Motion.[1]  (ECF No. 45.)

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

Target is a national retailer with approximately 283 stores in California, with some stores located in downtown shopping districts and others in suburban shopping malls, strip malls, or remote locations.  (Decl. of Michael Brewer ("Brewer Decl.") ¶¶ 3–4, ECF No. 65-2.)  Some stores are smaller than 50,000 square feet and others are as large as 200,000 square feet.  (*Id.* ¶ 5.)

Target hired Plaintiff as an ETL-AP in November 2014.  Target paid Plaintiff on a salaried basis and did not increase her pay when she worked forty hours or more per week or eight or more hours per day.  (Decl. of Neda Faraji ("Faraji Decl.") ¶ 3, ECF No. 48-3).   Target classifies all of its ETL-APs as exempt executives/administrators.  (Brewer Decl. ¶ 11.)  ETL-APs are the highest-ranking managers in the assets protection division of their store, and they manage "all major aspects of Target's store operations involving safety and security." (*Id.* ¶ 12.)  ETL-APs report directly to the Store Team Leader ("STL"), who is in charge of the store.  (*Id.* ¶ 13.)  ETL-APs directly supervise Assets Protection Team Leaders ("APTLs"), Assets Protection Specialists ("ASPs"), Target Protection Specialists ("TPSs"), and, in some stores, team members and team leaders in divisions outside of assets protection.  (*Id.* ¶ 14.)  Almost all ETL-APs work several shifts each week as their store's Leader on Duty ("LOD"), when they are responsible for managing the entire store.  (*Id.* ¶¶ 27–28.)  To qualify for an ETL-AP position, an applicant at a minimum must have a college degree or equivalent work experience.  (*Id.* ¶ 15.)

Plaintiff claims that, while she did manage and train hourly employees, the majority of the work she performed as an ETL-AP was non-managerial.  (Mot. 2–3.)  During her shifts as LOD, she was required to: inspect aisles and alert the system of products that needed replenishing; shelve moved, returned, or sold-out products;

---

[2] Both parties lodged numerous objections to the other side's evidence submitted in support of, or in opposition to, the Motion for Class Certification.  (*See* ECF Nos. 70, 71, 72, 79-3.)  The Court ruled on these evidentiary objections in a separate Order (ECF No. 109) and incorporates those evidentiary rulings herein.

organize aisles; inspect for, and discard, trash; push pallets of merchandise from the back room to the sales floor; sweep and mop the trash area; perform cashier duties; locate customers' online orders from the back room; and collect shopping carts from the parking lot and return them to the store. (Faraji Decl. ¶ 4.) On the days when she was not LOD, she spent most of her time performing such work. (*Id.*) Target characterizes the duties of LOD as overseeing and directing all store operations, supervising all team members, including team leaders and specialists, handling personnel and customer issues as they arise, and responding to emergencies. (Brewer Decl. ¶ 29.) LODs are also responsible for reviewing the store's financial metrics and walking the store to identify the objectives and priorities for the day. (*Id.* ¶ 28.)

Target communicates its expectations for ETL-APs and their respective duties through a job description document describing the "Core Roles." (Brewer Decl. ¶¶ 34–35; Decl. of David Spivak ("Spivak Decl") ¶ 37, ECF No. 48-4; Spivak Decl. Ex. 26, ECF No. 49-15.) Plaintiff argues that Target's descriptions of the ETL-AP position are vague, and the ETL-APs do not know what they actually mean. (Mot. 3.) Among the descriptors Plaintiff points to are: "Collaborate and work as one team," and "Model and drive a sales and service culture to deliver an exceptional guest experience." (Mot. 3 (citing Spivak Decl. Ex. 26).) Other Core Roles include: "Hold team members accountable," "Effectively execute and lead the team," and "Build and lead a safe and secure culture." (Spivak Decl. Ex. 26; *see also* Brewer Decl. ¶ 34.)

Plaintiff filed this action in Los Angeles County Superior Court. (ECF No. 1-1.) On January 27, 2017, Target removed the case. (ECF No. 1.) On April 19, 2017, Plaintiff filed her First Amended Complaint, alleging causes of action for: (1) Failure to pay for all hours worked at the correct rates of pay, Cal. Lab. Code §§ 510, 1194, and 1198; (2) Failure to provide meal and rest periods, Cal. Lab. Code §§ 226.7, 512, and 1198; (3) Failure to provide accurate written wage statements, Cal. Lab. Code § 226(a); (4) Failure to timely pay all final wages, Cal. Lab. Code §§ 201–203; (5)

Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 et seq.; and (6) Civil Penalties, Cal. Lab. Code §§ 2698 et seq.  (First Am. Compl. ("FAC"), ECF No. 27.)

Plaintiff seeks to certify the following class:

> All persons Target employed in California as salaried ETL-APs and/or other positions with similar job titles, descriptions, duties, and/or compensation arrangements, at any time during the time period beginning November 28, 2012 and ending when final judgment is entered.

(Mot. 10.)  Plaintiff also seeks to certify the following subclasses:

> Waiting Time Subclass:  All persons Target employed in California as salaried ETL-APs who separated from employment with Target during the period beginning three years before the filing of this action and ending when final judgment is entered.
>
> Wage Statement Subclass:  All persons Target employed in California as salaried ETL-APs to whom Target issued a wage statement during the period beginning one year before the filing of this action and ending when final judgment is entered.
>
> Civil Penalties Subclass:  All persons Target employed in California as salaried ETL-APs during the period beginning one year before Plaintiff's written notice to the California Labor and Workforce Development Agency and ending when final judgment is entered.

(*Id.* at 10–11.)

## III.   LEGAL STANDARD

Whether to grant class certification is within the discretion of the court. *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).  A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  In addition, a party seeking class certification must meet one of the three criteria listed in Rule 23(b).  Pursuant to Rule 23(b)(3) a party may maintain a class action if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Courts should certify a class only if they are "satisfied, after a rigorous analysis," that Rule 23 prerequisites have been met. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," which "cannot be helped." *Wal–Mart Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, examination of the merits is limited to determining whether certification is proper and "not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citation omitted).

## IV.   DISCUSSION

### A.   Numerosity

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff contends the proposed class numbers more than 800 members and satisfies any standard for numerosity. (Mot. 12.) Defendants do not contest this argument or even address this factor. Plaintiff meets the numerosity requirement.

### B.   Commonality & Predominance

Plaintiff argues there are numerous common questions, including: (1) Whether "Collaborate and work as one team" is an exempt duty; (2) Whether "Model and drive a sales and service culture to deliver an exceptional guest experience" is an exempt duty; (3) Whether "Developing and ensuring adherence to safe and secure programs and practices" is an exempt duty; (4) Whether the LOD duties are exempt duties; (5) Whether Target's failure to pay all overtime and premium wages owed at the time of termination is a "willful" violation of Labor Code § 203; (6) Whether Target's failure to provide the ETL-APs with accurate wage statements is a "knowing and intentional violation of Labor Code § 226; (7) Whether Target's uniform meal and rest period

policies have failed to provide the ETL-APs with meal and rest periods required by California law; (8) Whether Target is liable for restitution of earned premium wages based on its alleged failures to provide meal and rest periods to the ETL-APs; and (9) Whether Target is liable for civil penalties under PAGA for these alleged Labor Code violations. (Mot. 14.) Plaintiff also explains that this list is not exhaustive, because the Court will also need to decide whether the rest of ETL-AP duties are exempt. (Mot. 14 n.5.)

Even if Plaintiff meets the commonality requirement with her assertion of common questions, Plaintiff fails to meet the predominance requirement. Predominance requires "that questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Meeting the commonality requirement is insufficient to fulfill the predominance requirement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

For purposes of class certification, the Court must look to the nature of proof that would be necessary to establish the putative class members' entitlement to relief on their claims. Plaintiff contends that she is entitled to overtime compensation, while Target contends that the ETL-APs are exempt from overtime compensation, because they are exempt executives/administrators who perform mostly managerial duties. There can be no question that this issue is the central question in determining liability in this case. To resolve this dispute, which is the basis for each of Plaintiff's causes of action, will require the Court to consider the percentage or proportion of each ETL-AP's time spent on tasks that qualify for the exemption. *See Smith v. Red Robin Int'l*, No. 14-cv-01432-JAH-BGS, 2017 WL 1198907, at *3 (S.D. Cal. Mar. 31, 2017); *Deane v. Fastenal Co.*, No. 11-cv-0042-YGR, 2012 WL 12552238, at *3 (N.D. Cal. Sept. 26, 2012). As a result, the Court will have to make some determination as to how each ETL-AP actually spends his or her time. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945 (9th Cir. 2009). "[W]hen an employer asserts an

exemption as a defense . . . the resolution of which depends upon how employees spend their time at work, unless plaintiff proposes some form of common proof, such as a standard policy governing how and where employees perform their jobs, common issues of law or fact are unlikely to predominate." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 611 (N.D. Cal. 2010). Thus, Plaintiff must show that the way ETL-APs actually spend their time can be shown by common proof. Their attempt to do so here is unsuccessful.

Plaintiff submits evidence of common policies and job descriptions for the ETL-AP position. Plaintiff asks the Court to go through each description and classify each as either exempt or non-exempt. (Mot. 16.) But Plaintiff's mistake the relevant inquiry for determining whether an employee is exempt—the Court must look at *how much* time a specific employee is spending on exempt tasks. Whether the ETL-APs actually performed the duties required of them to such an extent that their positions were misclassified as exempt is not subject to common proof. Plaintiff has not shown that any Target policy requires each ETL-AP to spend the majority of their time on non-exempt duties. Instead, submitted are declarations from Plaintiff and a number of putative class members explaining that they spent the majority of their time on non-managerial tasks. In response, Target submitted declarations from other ETL-APs testifying that they spend the majority of their time on exempt tasks. Plaintiff has not met her burden to establish that the question of whether Target misclassified the ETL-APs as exempt is subject to common proof. Therefore, Plaintiff fails to demonstrate that common questions predominate over individual questions to support the predominance requirement and fails to meet the requirements for class certification.

## C. Remaining Requirements

Because the Court finds that Plaintiff fails to meet the predominance requirement, it will not address the remaining requirements for class certification.

# V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Class Certification.  (ECF No. 45.)

**IT IS SO ORDERED.**

April 30, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**